

August 7, 2012

VIA ECF AND FIRST CLASS MAIL

Hon. Peter G. Sheridan, U.S.D.J.
United States District Court for the
District of New Jersey
Clarkson S. Fisher Building &
U.S. Courthouse
402 East State Street
Trenton, NJ 08608

**William J. O'Shaughnessy**
Partner
T. 973.639.2094
F. 973.297.3722
woshaughnessy@mccarter.com

Re:  PPL EnergyPlus, LLC, et al. v. Solomon, et al.
      Civil Action No. 11-745 (PGS-DEA)

Dear Judge Sheridan:

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4056
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

        As your Honor directed, Plaintiffs write to identify the claims on which
Plaintiffs seek additional discovery prior to any ruling on defendants' and CPV's
motions for summary judgment and the nature of the discovery sought.

        As the Court is aware, Plaintiffs assert three claims: a field preemption claim,
a conflict preemption claim, and a Dormant Commerce Clause claim.  Currently
pending are (1) Plaintiffs' motion for summary judgment, which is limited to Plaintiffs'
field preemption claim; (2) the State Defendants' cross-motion for summary
judgment, which raises jurisdictional defenses; and (3) Intervenor-Defendant CPV's
cross-motion for summary judgment, which seeks summary dismissal of all three of
Plaintiffs' claims.

BOSTON

        No discovery is needed on Plaintiffs' *field* preemption claim, and thus that
claim is ripe for decision on the parties' cross-motions for summary judgment.
Further, no additional discovery is needed on Defendants' jurisdictional defenses.
However, Plaintiffs seek additional discovery on their *conflict* preemption claim and
Dormant Commerce Clause claim.[1]

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

_____

[1]      Plaintiffs itemize below the categories of discovery they are in the process of
seeking on their conflict preemption and dormant commerce clause claims.  During the
remaining discovery in the case, Plaintiffs may seek other information bearing on these two
claims in the event that the case is not disposed of fully on summary judgment.

WILMINGTON

ME1 13922376v.1

Hon. Peter G. Sheridan, U.S.D.J.
August 7, 2012
Page 2

## I.    Plaintiffs' Field Preemption Claim.

Plaintiffs' field preemption claim[2] "is [a] predominantly legal" question and does not depend on the existence of a conflict between state and federal law.  *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation and Dev. Comm'n*, 461 U.S. 190, 201, 212 (1983).  Rather, a state law is field preempted so long as it acts within a field occupied by federal law.  *See id.* at 212-13.

Here, it is undisputed that Congress has occupied the field of wholesale electricity pricing and sales.  *See* 16 U.S.C. § 824d(a) (establishing exclusive federal jurisdiction over "all rates and charges . . . received by any public utility for or in connection with the . . . sale of electric energy" at wholesale).  Thus, the only question with respect to field preemption is whether the LCAPP Act sets the price received by the LCAPP generators for each unit of capacity they sell in the wholesale market.  That question can be answered as a matter of law, without further discovery.  A decision that the LCAPP Act is field preempted would end this case, as Plaintiffs would have received all the relief they seek.[3]

## II.    Plaintiffs' Conflict Preemption Claim.

Plaintiffs' conflict preemption claim is entirely separate from their field preemption claim.  The conflict preemption claim asserts that the LCAPP Act interferes with the market-based policies that FERC has instituted in PJM, the wholesale interstate electricity market that includes New Jersey, and therefore is preempted as "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

Unlike Plaintiffs' field preemption claim, which raises purely legal issues, Plaintiffs' conflict preemption claim raises factual questions concerning the LCAPP Act's effect on the PJM market.  Thus, limited fact and expert discovery is needed on this claim.[4]

---

[2]     Plaintiffs obtained permission from Magistrate Judge Arpert to move for summary judgment on their field preemption claim prior to the completion of fact discovery because that claim presents a focused legal issue that, if resolved in Plaintiffs' favor, would be sufficient to declare the LCAPP Act unconstitutional and end this litigation.

[3]     The SOCAs terminate if a court declares the LCAPP Act to be unconstitutional.  *See* SOCA, Ex. L to Decl. of Mara Zazzali-Hogan in Supp. of Pls.' Mot. for Summ. J. (Dkt. 88-3) § 8.1.2; *see also id.* § 3 (agreement effective until "Termination Date").

[4]     As Plaintiffs have previously informed the Court, the period for fact discovery in this case has not ended, and the deadlines for submission of expert reports, and related expert discovery, have not yet come.  The deadlines originally set forth in the Scheduling Order entered by Magistrate Judge Salas were tolled by Magistrate Judge Arpert last summer

Hon. Peter G. Sheridan, U.S.D.J.
August 7, 2012
Page 3

     For fact discovery, Plaintiffs seek information about how the LCAPP Act affected the recent 2012 PJM capacity auction.  This information is principally held by the three generators who benefited from the LCAPP Act, including Intervenor-Defendant CPV.  Plaintiffs also seek any information possessed by the State (or the agent it hired to administer the LCAPP Act, Levitan & Associates)[5] or PJM (or its administrator) concerning the LCAPP Act's effect on the PJM auction.  Among the key issues as to which Plaintiffs seek information are:

- whether the generators that received the LCAPP Act's price guarantee would have bid into the PJM auction without it;

- whether the LCAPP Act's price guarantee affected the LCAPP generators' bidding strategies or bid prices; and

- whether the LCAPP Act's price guarantee affected the market clearing price in the PJM capacity auction or will suppress PJM energy market prices.

     Plaintiffs also anticipate submitting expert testimony addressing the impact of the LCAPP Act on FERC's regulatory scheme, as Plaintiffs explained in their Rule 56(d) declaration in opposition to CPV's motion for summary judgment.  *See* Decl. of Mara E. Zazzali-Hogan Pursuant to Fed R. Civ. P. 56(d) (Dkt. 124-4) ("Pls.' 56(d) Decl.") ¶ 8.

     This limited fact and expert discovery is important to Plaintiffs' conflict preemption claim.  Plaintiffs will pursue that discovery as quickly and efficiently as possible.  Additionally, Plaintiffs would be prepared to consider foregoing some of this discovery if CPV and the State Defendants are prepared to stipulate to the salient facts.

**III.**    **Plaintiffs' Dormant Commerce Clause Claim.**

     Plaintiffs' Dormant Commerce Clause claim is entirely independent of the two preemption claims.  It asserts that the purpose and effect of the LCAPP Act was to discriminate in favor of in-state generators, even though out-of-state generators are equally capable of serving New Jersey's electricity needs.

---

when it became apparent that the State Defendants could not meet the previous deadlines. New deadlines have not been established.  Magistrate Judge Arpert convened a Status Conference on July 5 to address the resetting of deadlines for fact and expert discovery, and it was agreed to defer that issue until after this Court's ruling on the pending summary judgment motions.

[5]    For example, Plaintiffs have learned that the New Jersey BPU recently sought from PJM detailed data regarding the bids in the PJM May 2012 capacity auction.

Hon. Peter G. Sheridan, U.S.D.J.
August 7, 2012
Page 4

        To support their Dormant Commerce Clause claim, Plaintiffs seek limited additional discovery concerning whether the State (and Levitan, its LCAPP Agent) implemented the LCAPP Act by giving a preference to in-state generators.  Plaintiffs primarily seek such discovery from Levitan, who analyzed the applications to participate in LCAPP and whose recommendation of three winning generators the State accepted without question.  *See* Pls.' 56(d) Decl. ¶ 6.

**IV.     The Jurisdictional Issues Raised by Defendants**

There is no merit to the jurisdictional issues raised by Defendants.  In any event, Defendants have not sought discovery on those issues, nor is any discovery necessary.

Respectfully,

*William J. O'Shaughnessy*

William J. O'Shaughnessy


cc:     Hon. Douglas E. Arpert, U.S.M.J. (via First Class Mail)
        All Counsel of Record (via ECF)

ME1 13922376v.1