**DICKSTEIN**SHAPIRO LLP

1825 Eye Street NW | Washington, DC 20006-5403
TEL (202) 420-2200 | FAX (202) 420-2201 | dicksteinshapiro.com

August 14, 2012

VIA ECF AND FEDERAL EXPRESS
Hon. Peter G. Sheridan, U.S.D.J.
United States District Court for the District of New Jersey
 Clarkson S. Fisher Building & U.S. Courthouse
402 E. State Street
Trenton, NJ  08608

Re:   *PPL EnergyPlus, LLC, et al. v. Solomon, et al.*
      Civil Action No. 3:11-745 (PGS-DEA)

Dear Judge Sheridan:

     Intervenor Defendant CPV Power Development, Inc. ("CPV") hereby responds to Plaintiffs' letter of August 7, 2012 seeking additional discovery before this Court rules on the pending motions for summary judgment.  As explained in more detail below, CPV believes that:

- The cross motions on field preemption and the State Defendants' jurisdictional motion are ripe for decision without further discovery;

- CPV's prior agreement to certain "facts" that Plaintiffs rely upon in opposing CPV's motion on conflict preemption, and the further concessions made below, make CPV's conflict preemption claim ripe for decision; and

- CPV's motion regarding the dormant Commerce Clause claim is ripe for decision now, but that it certainly will be ripe once the State provides non-privileged information confirming that it implemented the LCAPP Act's neutral eligibility criteria in a non-discriminatory manner.

I.    **The Cross Motions on Field Preemption and the State's Jurisdictional Motion Are Ripe for Decision Without Further Discovery.**

     The cross motions on field preemption present solely a *legal* question.  FERC has exclusive jurisdiction over wholesale electric energy sales, but States have exclusive jurisdiction over construction of new generation.  The question before this Court is whether the financial incentives provided for in the LCAPP Act to construct new generation are a permissible exercise

**DICKSTEIN**SHAPIRO LLP

Hon. Peter G. Sheridan, U.S.D.J.
August 14, 2012
Page 2

of the State's authority over generation. That would be so if *either* (a) the SOCA is a "financial" instrument not subject to FERC jurisdiction, *or* (b) the FPA's reserving to the States the right to incentivize financially new generation authorizes New Jersey to afford a price guaranty needed to build new generation.

Similarly, the State Defendants' jurisdictional claims do not rely on any facts not already before this Court and, as Plaintiffs' concede, they have not sought discovery on those issues. It therefore should be decided without further discovery.

## II.   CPV's Motion for Summary Judgment on Plaintiffs' Conflict Preemption Claim Is Ripe for Decision.

CPV believes that no further discovery is needed for the Court to decide its pending summary judgment motion on the conflict preemption claim because (a) there are no issues of *material* fact that are genuinely disputed, (b) the deadline for new discovery (of CPV or anyone else) expired long ago, and (c) to secure as speedy a disposition as possible, CPV will stipulate on this motion to facts that, in light of Plaintiffs' request and combined with Defendants' prior concessions, will make the conflict preemption claim ripe for decision.

### A.   Additional discovery is unnecessary to dismiss Plaintiffs' conflict preemption claim.

All parties agree that:

1. FERC has exclusive jurisdiction over wholesale market prices;

2. CPV is obligated by the SOCA to bid in conformity with the PJM rules;

3. The PJM Tariff establishes the legal standard for determining whether bids are appropriately market-based; and

4. In a series of Minimum Offer Price Rule Orders ("MOPR Orders"),[1] FERC determined with express reference to the New Jersey LCAPP Act that prices resulting from auctions conducted in accordance with the PJM

---

[1] *PJM Interconnection, L.L.C.*, 135 FERC ¶ 61,022 ("*MOPR Order*"), *reh'g*, 137 FERC ¶ 61,145 (2011).

**DICKSTEIN**SHAPIRO LLP

Hon. Peter G. Sheridan, U.S.D.J.
August 14, 2012
Page 3

                rules would result in just and reasonable capacity prices, and therefore that the LCAPP Act was not in "tension" with its objectives.

      Plaintiffs have never questioned whether CPV would bid in accordance with PJM rules. Indeed, their Opposition concedes: "The requirement that the selected LCAPP generators abide by PJM auction rules is irrelevant to Plaintiffs' conflict claims." Ps' Opp. Br. at 42 [ECF No. 124]. Discovery of the bids by CPV – or anyone else – are likewise "irrelevant."

      *As a matter of law*, it does not matter whether CPV's bid into the recent PJM auctions caused the resulting auction prices to be lower than they would have been had CPV not participated. The Supreme Court has expressly ruled in connection with the analogous Natural Gas Act, 15 U.S.C. sec. 717 *et seq.*, that conflict preemption does not exist when a State acting pursuant to its Congressionally-delegated authority directs private parties to operate in a manner that has "some effect" on prices in a FERC-jurisdictional market. *Northwest Central Pipeline Co. v. State Corp. Comm'n of Kansas*, 489 U.S. 493, 524 (1989). Indeed, even *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293 (1988), to which Mr. Coffin twice directed the Court's attention (Tr. 9, 82), states (at 308): "Of course, every state statute that has some indirect effect on rates and facilities * * *, is not pre-empted."

      These *legal* principles render immaterial to conflict preemption, as a Rule 56 matter, what and why CPV bid as it did. And consequently, CPV's motion for summary judgment on conflict preemption is presently ripe for decision.

      **B.**    <u>**Plaintiffs' request for additional information is incredibly untimely.**</u>

      Judge Arpert's May 4, 2011 Pretrial Scheduling Order (entered after an in-court scheduling conference) required Plaintiffs to serve written discovery by or before July 18, 2011. CPV moved to intervene two months before that time, so Plaintiffs knew then that CPV would participate in the case. Judge Arpert entered an Amended Scheduling Order on September 15, 2011 (after conducting a teleconference with counsel) that required deposition notices to be served by October 12, 2011. CPV's formal motion to intervene had been granted two months before that deadline. Yet despite these deadlines, Plaintiffs sought **no** discovery from CPV – no documents, no interrogatory answers, no deposition testimony. Enforcement of Judge Arpert's orders would prevent Plaintiffs from serving new discovery now. It is true that the deadline for *completing* discovery – to which Plaintiffs' letter is directed – has been extended several times. But the extensions were granted to enable Plaintiffs to *complete* timely-requested discovery of

**DICKSTEIN**SHAPIROLLP

Hon. Peter G. Sheridan, U.S.D.J.
August 14, 2012
Page 4

the State, not to seek new discovery for CPV or anyone else. This fact is clearest from Judge Arpert's letter order of February 28, 2012, which extends the time *only* for Plaintiffs to complete discovery of NJBPU agent Levitan & Associates.[2]

Moreover, late-in-the-day relief from the deadlines that Plaintiffs crafted would prejudice CPV. CPV invested time and effort to bring the motion for summary judgment in reliance on the way in which Plaintiffs had postured their case. The Complaint alleged that the LCAPP and SOCAs were preempted solely because of their content – a "facial" challenge. The Complaint made *predictions* of the effect that LCAPP and the SOCAs would have in the future. But the discovery that Plaintiffs noticed in accordance with the Scheduling Orders evinced no intent to present a "retrospective" attack based on May 2012 auction results because Plaintiffs sought no discovery about any the bidding intent of any PJM market participant, nor of bidding data from PJM itself. And CPV took at face value Plaintiffs' statements to Judge Arpert that they wanted the most expeditious ruling possible to clarify any uncertainty *before* the May 2012 auctions. CPV submits that it would be unfair (and, for the reasons stated above and below, unnecessary) to re-start discovery as Plaintiffs request.

> C. **To expedite consideration of its motion, CPV will make additional concessions of fact that remove the need for discovery of CPV.**

CPV is serving with this letter two confidential, for attorneys eyes only documents that demonstrate conclusively the lawfulness of its capacity bid into the May 2012 auction.[3] Some months ago, CPV asked the PJM's Office of Interconnection to determine independently the capacity price that CPV's New Jersey plant could bid.[4] That Office responded on April 20,

---

[2] It needs to be noted in this regard that Plaintiffs letter seems to portend a wide-ranging discovery program against *all* SOCA-supported generators, not just CPV. We say this because the "questions" that Plaintiffs seek to answer encompass all "generators that received the LCAPP Act's price guarantee" – not just CPV. If that is what Plaintiffs seek, it is all the more reason to enforce Judge Arpert's deadlines (to which Plaintiffs agreed).

[3] Per chambers instructions, CPV is providing to chambers and all parties of record these documents, marked "Confidential" and "Attorneys' Eyes Only," pursuant to the terms of the Discovery Confidentiality and Protective Order [ECF No. 72].

[4] *See* PJM Tariff, Attachment DD § 5.14(h)(5) (permitting a new bidder to "obtain[] a determination from the Office of the Interconnection prior to the RPM Auction in which it seeks to submit the Sell Offer, that such Sell Offer is permissible because it is consistent with the

(footnote cont'd)

**DICKSTEIN**SHAPIRO LLP

Hon. Peter G. Sheridan, U.S.D.J.
August 14, 2012
Page 5


2012, stating the *exact* amount that CPV could permissibly bid.  PJM's confirming letter is the first attachment.  CPV in fact bid exactly that amount.  The second attachment – which is a "screen shot" of CPV's entry into PJM's computerized bid entry system – confirms that fact, because the bid amount in the screen shot is identical to the dollar amount stated in the PJM instruction letter.[5]

As to the three specific items on which Plaintiffs seek "discovery," CPV responds as follows for purposes of the motion for summary judgment:

- "Whether the generators that received the LCAPP Act's price guarantee would have bid into the PJM auction without it"?

    CPV response:  "CPV would not have bid into the May 2012 auction if it had not been a party to the SOCA."

- "Whether the LCAPP Act's price guarantee affected the LCAPP generators' bidding strategies or bid prices"?

    CPV response:  "Yes, because the SOCA obligated CPV to bid at the 'lowest reasonable price,' and PJM's Office of Interconnection stated that the bid price it authorized would be 'consistent with the competitive, cost-based, fixed, net cost of [CPV's] new entry,' CPV would not have bid any differently than it did."

---

competitive, cost-based, fixed, net cost of new entry were the resource to rely solely on revenues from PJM-administered markets").

[5] Shortly after the May 2012 auction, but before the results were announced, the PJM Independent Market Monitor ("IMM") filed a formal inquiry at FERC about the lawfulness of the prices that CPV Maryland bid into the PJM auction.  (The IMM did not question the PJM-approved bid price of CPV's New Jersey project.)  Without knowing the subject bid prices – or even the bidders' *identities* – the generator Plaintiffs made their own FERC filings.  However, on May 17, 2012, with permission from FERC, the IMM withdrew its filing because, it stated, it had "determined that no harm to the markets will result as a consequence of [CPV's bid]."  Notice of Withdrawal of the Independent Market Monitor for PJM, EL12-63-000 (May 17, 2012).  Plaintiffs' thereafter voluntarily withdrew their own filings, too.  Joint Notice of Withdrawal of Complaint, EL12-63-000 and EL12-66-000 (May 18, 2012).

**DICKSTEIN**SHAPIRO LLP

Hon. Peter G. Sheridan, U.S.D.J.
August 14, 2012
Page 6

- "Whether the LCAPP Act's price guarantee affected the market clearing price in the PJM capacity auction or will suppress PJM energy prices?"

    CPV response: "As it has previously conceded,[6] CPV does not dispute that the LCAPP Act affected or will affect PJM market clearing prices for capacity."

### D. There is no need for expert reports or expert discovery at this point.

Plaintiffs' letter seems to state (at 3) a desire to submit expert reports and pursue "expert discovery" at this time. But it also acknowledges that Plaintiffs will forego doing so if Defendants "are prepared to stipulate to the salient facts." The motion-specific concessions above render expert reports and discovery unnecessary. It was clear at the hearing that Plaintiffs want to show that the SOCA enables CPV to bid lower than it otherwise could (to "bid, say, at zero," they said (Tr. 77)), and that bidding this way would depress auction prices. The concession stated in the third bullet point above gives Plaintiffs the ability to make their "price effect" argument in opposing CPV's motion.

Regarding the possibility that CPV could bid "$0" (*i.e.*, as a "price taker"), CPV concedes that it – like Plaintiffs' and all other incumbent generators that clear the PJM auction – can do so in future auctions.[7] But that has no legal bearing on conflict preemption. As the *MOPR Order* explains, Plaintiffs (and other generators) asked FERC expressly to *prohibit* any generator (like CPV) who receives a "State subsidy" from being permitted to bid as a price taker after it had cleared one PJM capacity auction. *MOPR Order* at PP 160, 171. FERC considered that request and rejected it. It stated:

> We decline to add this requirement because even if discriminatory subsidies are being received, if the resource is needed at the MOPR bid[, *i.e.*, it clears one of the PJM capacity auctions at an offer price near its full cost of entry,] then it is a competitive resource and should be permitted to participate in the auction regardless of whether it also receives a subsidy.

---

[6] CPV Reply Br. at 1-2 [ECF No. 132].

[7] *See, e.g.*, PJM Tariff, Attachment DD § 5.14(h)(4)(i) (excluding from the Minimum Offer Price Rule Sell Offers based on Generation Capacity Resources that already have cleared an RPM Auction).

# DICKSTEINSHAPIRO LLP

Hon. Peter G. Sheridan, U.S.D.J.
August 14, 2012
Page 7

*MOPR Order* at P 177.  That FERC refused to prohibit – indeed, expressly permitted – exactly the conduct that Plaintiffs claim could "conflict" with FERC's objectives dooms Plaintiffs' claim in this regard to failure.

      Moreover, from a practical perspective, granting leave to move into the expert phase of this case will create enormous (and unnecessary) complications, delay and expense.  If Plaintiffs seriously intend to "reconstruct" PJM auctions, they will need to know the bid prices and quantities of other generators not party to this case.  Getting that information from PJM or from the other generators would be time-consuming and costly.  Section 18.17.1 of the PJM Tariff expressly prohibits PJM from providing "any documents, data or other information" of PJM participants.  But in any event, it will not matter.

      Other PJM generators could not assert such objections.  But to get a full picture of the market, discovery of Plaintiffs and others would probably be necessary.

**III.   Plaintiffs' Dormant Commerce Clause Claim Also Is Ripe for Decision Now, but Undoubtedly Will Be Ripe After the State Provides the Non-Privileged Requested Information.**

      Although CPV is the movant on the Commerce Clause claim, the only discovery Plaintiffs ask to complete is from the State's agent Mr. Levitan.  CPV believes, for the reasons it stated in its briefs and at argument, that there are no material issues of fact that are genuinely disputed that require further discovery – what LCAPP bidders offered, and the assessment that was made of them, is stated in Mr. Levitan's report.  Most significant, however, is that Plaintiffs did not deny in their brief that their responses to the LCAPP solicitation did **not** offer the State the new generation plant that it was seeking (in government contracting parlance, they were

**DICKSTEIN**SHAPIRO LLP

Hon. Peter G. Sheridan, U.S.D.J.
August 14, 2012
Page 8


"non-compliant"), and Plaintiffs conceded as much at the hearing.  *See* Tr. 105-107.  So in the interest of expedition, CPV would prefer that this aspect of CPV's motion were decided as soon as possible.


Respectfully submitted,


  *s/ Joel B. Kleinman*
Joel B. Kleinman
(202) 420-2221
kleinmanj@dicksteinshapiro.com


  *s/ Sean J. Kirby*
Sean J. Kirby
(212) 634-3023
skirby@sheppardmullin.com


cc:   Hon. Douglas E. Arpert, U.S.M.J. (with attachments, via Federal Express); and
       All Counsel of Record (via ECF and separately, with attachments, via Electronic Mail)


Attachments (2), marked "Confidential" and "Attorneys' Eyes Only," have been served on chambers and all counsel of record, subject to the terms of the Discovery Confidentiality and Protective Order [ECF No. 72].