UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PPL ENERGY PLUS, LLC, et al., | |
| Plaintiffs, | Civil Action No. 11-745 (PGS) |
| v. | **CLERK'S OPINION GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO TAX COSTS** |
| ROBERT M. HANNA, in his official capacity as President of the New Jersey Board of Public Utilities, et al. , | |
| Defendants. | |

This matter has come before the Clerk on the motion [Dkt. Entry 324] of Plaintiffs The

PPL Parties[1], The Calpine Companies[2], Exelon Generation Company, LLC, Essential Power,

LLC, Atlantic City Electric Company, PSEG Power, LLC, and Public Service Electric and Gas

Company (collectively, "Plaintiffs") to tax costs against Defendants pursuant to Federal Rule of

Civil Procedure 54(d) and Local Civil Rule 54.1.  Defendants Robert M. Hanna, Jeanne M. Fox,

Joseph L. Fiordaliso, Mary-Anna Holden and Dianne Solomon (hereinafter, "State Defendants"),

and Intervenor/Defendant CPV Power Development, Inc. ("CPV") (collectively, "Defendants")

oppose this motion.

[1]       The "PPL Parties" include Plaintiffs PPL EnergyPlus, LLC; PPL Brunner Island, LLC; PPL Holtwood, LLC; PPL Martins Creek, LLC; PPL Montour, LLC; PPL Susquehanna, LLC; Lower Mount Bethel Energy, LLC; PPL New Jersey Solar, LLC; PPL New Jersey Biogas, LLC; and PPL Renewable Energy, LLC, which are marketing and generation subsidiaries of PPL Corporation.

[2]       The "Calpine Companies" include Plaintiffs Calpine Mid-Atlantic Generation, LLC, Calpine New Jersey Generation, LLC, Calpine Bethlehem, LLC, Calpine Mid Merit, LLC, Calpine Vineland Solar, LLC, Calpine Energy Services, L.P., Calpine Mid-Atlantic Marketing, LLC, and Calpine Newark, LLC, which are generation and marketing subsidiaries of Calpine Corporation.

Plaintiffs, a group of companies that produce and sell energy, filed a complaint in this matter on February 9, 2011, seeking a declaration that the New Jersey Long-Term Capacity Pilot Project Act, N.J.S.A. §§ 48:3-51, 48:3-98.2-.4 (("LCAPP," "the Act"), is unconstitutional as violating the Supremacy Clause and the dormant Commerce Clause [Dkt. Entry 1]. They sought to enjoin Defendants, sued in their official capacities as commissioners of the New Jersey Board of Public Utilities ("BPU"), from acting in furtherance of the LCAPP, which they deemed preempted by the Federal Power Act, 16 U.S.C. 824 *et seq.* Id.

The LCAPP was enacted in January 2011 to encourage power generation companies to build new power plants in New Jersey. Under the Act, to be enforced by the BPU, new electric energy generators would be given fifteen-year contracts, called Standard Offer Capacity Agreements ("SOCAs"), through which they would be guaranteed a predetermined rate from local utilities for a predetermined amount of electrical capacity. The BPU solicited bids to construct new generation facilities and accepted those of CPV, Hess Newark LLC ("Hess"), and NRG Energy, Inc.("NRG"). It then compelled New Jersey electricity distribution companies to sign SOCAs with the LCAPP generators. CPV's and Hess' projects advanced but NRG's did not.

On March 9, 2011, CPV moved to intervene [Dkt. Entry 16] and its motion was granted by the Court on July 19, 2011 [Dkt. Entry 63].

The State Defendants' motion to dismiss was denied on October 20, 2011 [Dkt. Entry 69], as were the motions for summary judgment of Plaintiffs, CPV and the State Defendants on September 28, 2012. [Dkt. Entries 151, 152].

Following a 13-day bench trial, held on April 2-4, 8-12, 18-19, May 6-9, and June 17, 2013 [Dkt. Entries 252, 255-60, 263-64, 266-68, 272, 291], the Court entered final judgment

in favor of Plaintiffs on October 25, 2013 [Dkt. Entry 314].  The LCAPP was found to be unconstitutional and the BPU was enjoined from enforcing the Act.  The Court's order further provided that Plaintiffs were entitled to costs pursuant to Fed. R. Civ. P. 54(d).

In its corresponding Memorandum [Dkt. Entry 305], the Court explained that the LCAPP was preempted by the Federal Power Act, which vests the Federal Energy Regulatory Commission ("the Commission") with exclusive control over interstate wholesale rates of electric capacity.  The LCAPP was both field and conflict preempted because the SOCAs occupy the same field of regulation as the Commission and intrude upon the Commission's authority to set wholesale energy prices. Whereas the Court found that the Act violated the Supremacy Clause, it concluded that Plaintiffs had not met their burden of proving that it also violated the dormant Commerce Clause.

Defendant/intervenor CPV appealed the final judgment to the Third Circuit on October 31, 2013 [Dkt. Entry 316].   Hess' emergency motion to intervene in CPV's appeal was granted by the circuit court on November 14, 2013.  [Dkt. Entry 320].  On November 21, 2013, the State Defendants filed their notice of appeal.  [Dkt. Entry 321].

This Court's final judgment was affirmed on September 11, 2014 by the Third Circuit, which determined that the LCAPP was field preempted, without reaching the conflict preemption or Commerce Clause issues.  [Dkt. Entry 331].

While the appeals to the Third Circuit were pending, on November 25, 2013, Plaintiffs filed their motion to tax costs, here at issue.  They request therein the costs of:  filing and pro hac vice fees ($1,550.00); fees for service of summons and subpoena ($1,132.40); fees for printed hearing, trial and deposition transcripts ($48,350.10); witness fees ($10,468.31); exemplification and copying costs ($52,630.97); § 1923 docket fees ($20.00); and fees of a trial support team

3

($45,630.00), or a total of $159,781.78.[1]   The Defendants do not contest the fees of the clerk, i.e., filing and service fees, or the $20 docket fees.

The Clerk notes that the Third Circuit's judgment in lieu of mandate [Dkt. Entry 333] taxes costs against appellants, and in favor of Plaintiffs here.  However, there is no indication on the docket that Plaintiffs seek appellate costs here in the district court pursuant to Fed. R. App. P. 39(e).

Defendants' arguments in opposition will be addressed below, but the Clerk dismisses as moot their initial contention that the taxation of costs should be stayed pending the resolution of the Third Circuit appeals.  Defs.' Br. at 2-3.  As noted above, the circuit court rendered its decision affirming this Court on September 11, 2014.

## I.   <u>Legal Standards</u>

Taxable costs are allowed by Fed. R. Civ. P. 54(d), which provides:  "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."  A prevailing party is "one in whose favor a judgment is rendered, regardless of whether the party has recovered its entire claim or a portion thereof."  <u>Garonzik v. Whitman Diner</u>, 910 F. Supp. 167, 168 (D.N.J. 1995) (citing <u>Fahey v. Carty</u>, 102 F.R.D. 751 (D.N.J. 1983)).

There is such a strong presumption that costs should be awarded to the prevailing party that, "'[o]nly if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the

---

[1]       In their bill of costs [Dkt. Entry 324-1], Plaintiffs originally requested witness fees in the amount of $11,934.51 and a total of $161,247.98, but, in their reply brief, they decreased the witness fees amount and the total by $1,466.20.

prevailing party.'" <u>Reger v. Nemours Found., Inc.</u>, 599 F.3d 285, 288 (3d Cir. 2010) (quoting

<u>In re Paoli R.R. Yard PCB Litig.</u>, 221 F.3d 449, 468 (3d Cir. 2000)).

Even so, taxable costs are "limited to relatively minor, incidental expenses," and are

"modest in scope." <u>Taniguchi v. Kan Pacific Saipan, Ltd.</u>, 132 S. Ct. 1997, 2006 (2012).

Despite the "venerable presumption that prevailing parties are entitled to costs," <u>Marx v. Gen.</u>

<u>Revenue Corp.</u>, 133 S. Ct. 1166, 1172 (2013), absent express statutory authorization, the clerk

and district court may reimburse only those costs enumerated in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained
>     for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials
>     where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and
>     salaries, fees, expenses, and costs of special interpretation services under
>     section 1828 of this title.

<u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 441 (1987).

Furthermore, even with such presumption in its favor, the prevailing party must

present sufficient information to carry its burden of showing that the costs sought fall within

the limits of § 1920. <u>Romero v. CSX Transp., Inc.</u>, 270 F.R.D. 199, 201-02 (D.N.J. 2010).

In addition to Rule 54(d) and 28 U.S.C. § 1920, the Clerk's decision is guided by

Local Civil Rule 54.1, which "establishes the general procedures to be followed in those cases

where a party is entitled to recover costs" under § 1920. Lite, <u>N.J. Federal Practice Rules</u>,

Comment 2 to Rule 54.1 (Gann 2015 ed.) at 251.

Defendants do not dispute that Plaintiffs are prevailing parties, having obtained, through

final judgment, the declaratory and injunctive relief sought in their complaint. <u>See North Dakota</u>

v. Heydinger, No. 11-cv-3232, 2014 WL 7157013, at *2-3 (D. Minn. Dec. 15, 2014) (where district court granted summary judgment in favor of plaintiffs, finding that Minnesota statute was preempted by Federal Power Act and violated dormant commerce clause, and enjoined defendants from enforcing the statute, plaintiffs were "prevailing parties" because the ordered declaratory and injunctive relief altered defendants' behavior towards plaintiffs, to plaintiffs' benefit,  in accordance with Supreme Court's decision in Farrar v. Hobby, 506 U.S. 103 (1992)).

Furthermore, Plaintiffs' bill of costs was timely filed on November 25, 2013, or "within 30 days after the entry of a judgment allowing costs," which occurred on October 25, 2013.[2] L. Civ. R. 54.1(a).  Plaintiffs have also complied with the verification requirement of 28 U.S.C. § 1924, mirrored in L. Civ. R. 54.1(b), by declaring, through their attorney's signature of the AO 133 form [Dkt. Entry 423-1], that the costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed.  Plaintiffs' counsel, Lawrence S. Lustberg, Esq., also attests to same in his Declaration ("Lustberg Decl.") [Dkt. Entry 324-3] and outlines therein the specific items of cost sought.  Finally, supporting invoices have been appended to Plaintiffs' motion, as required under L. Civ. R. 54.1(b).

## II.    Commerce Clause Claim

While Defendants do not dispute that Plaintiffs are the prevailing parties, they do, however, maintain that Plaintiffs' cost award should be halved to account for the failure of their Commerce Clause claim.  Defendants assert, generally, that "Plaintiffs' Bill of Costs does not

---

[2]    The 30th day, November 24, 2013, fell on a Sunday, and therefore, under Fed. R. Civ. P. 6(a)(1)(C), Plaintiffs could file their motion until the end of Monday, November 25th.

indicate the extent to which the requested amount of $161,247.98 includes costs incurred for their unsuccessful Commerce Clause claim," and that "even if Plaintiffs could show that all their costs were actually and necessarily incurred, they would be entitled to no more than 50% of the claimed amount of $161,247.98." Defs.' Br. at 2.  Defendants repeat this argument specifically in connection with the cost of making copies, id. at 16, and the cost of trial support services, id. at 18.

Defendants' argument does not pass muster under Third Circuit law.  In the case of ADM Corp. v. Speedmaster Packing Corp., the Third Circuit held that costs must be granted to a prevailing party in the absence of some defection by that party. 525 F.2d 662, 665 (3d Cir. 1975).  It adopted the language enunciated by the Seventh Circuit in Chicago Sugar Co. v. Am. Sugar Ref. Co., 176 F.2d 1, 11 (7th Cir. 1949) that "the denial of costs to the prevailing party . . . is in the nature of a penalty for some defection on his part in the course of the litigation." Unduly extending or complicating the resolution of the issues constitutes such "defection." ADM Corp., 525 F.2d at 665.

The requirement that costs be granted to the prevailing party, absent some "defection" on its part, was applied in the case of Institutionalized Juveniles v. Sec'y of Public Welfare, in which the Third Circuit rejected the same argument pressed by Defendants here.  758 F.2d 897 (3d Cir. 1985).  The court determined that the "prevailing party" analysis in cost determinations, as in fee applications under 42 U.S.C. § 1988,  should focus on the relief obtained rather than on the success of the legal theories asserted.  Id. at 911, 926.  In that case, plaintiffs were adjudged to be the prevailing parties, even though judgment was actually entered in favor of defendants. The claims of plaintiffs, who challenged a Pennsylvania law, had been mooted by the enactment

by Pennsylvania of a statute and regulations which granted much of the relief sought by plaintiffs in their suit.  The district court denied plaintiffs their costs, due to the limited nature of the success they achieved through extra-judicial relief, and the plaintiffs appealed.

Applying the ADM defection test, the Third Circuit stated that costs should not be denied to plaintiffs absent a showing that they created unjustifiable costs by needlessly prolonging or complicating the litigation.  In finding that the district court had abused its discretion, the court concluded, "[l]imited success, however, is not a 'defection' under the standard articulated in *ADM* and described in detail in *Chicago Sugar* and therefore does not justify the penalty of a denial of costs."  Id. at 926.

The above Third Circuit analysis was applied by another district court within this circuit in the case of Multitherm Corp. v. Fuhr, Civ. A. No. 89-6151, 1992 WL 158383 (E.D. Pa. June 29, 1992).  Citing Institutionalized Juveniles, the court there denied the losing party's request to apportion costs in a claim by claim manner, and thereby reduce the cost award, based upon the fact that plaintiff prevailed on only one of its eight counts.

More recent examples of the court denying the apportionment of costs based upon the prevailing party's limited success are Bacon v. Stiefel Labs., Inc., No. 11-20489-CIV, 2014 WL 4825279, at *9-10 (S.D. Fla. Sept. 25, 2014) ("[c]ases from this and other circuits consistently support shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced"); Apple Inc. v. Samsung Elec. Co., 11-CV-01846, 2014 WL 4745933, at *4-5 (N.D. Cal. Sept. 19, 2014) (in that patent litigation, applying Federal Circuit test of "prevailing party," which similarly looks at relief obtained, the court refused to deny Apple its costs even though Apple did not win on many claims it asserted and recovered only a portion of the damages it

8

originally sought from Samsung); <u>Ruiz v. APCO Constr.</u>, No. 2:10-cv-1312, 2014 WL 4402379, at *3 (D. Nev. Sept. 5, 2014) (where defendant prevailed on only two of nine claims asserted by plaintiffs, because court declined to exercise supplemental jurisdiction over seven state law claims after dismissing two federal claims, court denied plaintiffs' request to strike portions of defendant's bill of costs).

In the case at bar, Defendants do not raise any "defection" by Plaintiffs.  Rather, they merely point to the lack of success of one of the legal theories upon which Plaintiffs relied. Defendants do not, and cannot, argue that Plaintiffs failed to obtain the relief they sought, i.e., the declaration that the LCAPP is unconstitutional and the voiding of the SOCAs.  Accordingly, the Clerk rejects Defendants' argument and refuses to reduce Plaintiffs' cost award due to the failure of their Commerce Clause claim.  The requested costs are addressed below in the order in which they fall within § 1920.

### III.    Fees of the Clerk and Marshal, § 1920 (1)

Fees sought under § 1920 (1) as fees of the clerk and marshal consist of:  the $350.00 fee for the filing of Plaintiffs' complaint; $1,200 in *pro hac vice* admission fees; and the $189.90 and $942.50 fees for the service of summons and complaint, and subpoenas, respectively.

#### *Filing Fee*

The docket indicates that Plaintiffs paid the $350 fee required under 28 U.S.C. § 1914(a) for the filing of their complaint in 2011.  The Clerk consistently grants the filing fee as a § 1920 (1) fee of the clerk and awards this **$350.00** cost, to which Defendants do not object.

#### *Pro Hac Vice Admission Fees*

Plaintiffs seek the $1,200 cost of the admission *pro hac vice* of eight attorneys at the rate

of $150 per attorney [Dkt. Entry 324-5, Ex. B], relying upon the case of Church & Dwight Co., Inc. v. Abbott Labs., Civ. A. No. 05-2142, 2009 U.S. Dist. LEXIS 58067, at * 20-21 (D.N.J. July 8, 2009).  Pls.' Br. at 3; Lustberg Decl. ¶ 4.

Defendants' position is that "[a]lthough pro hac vice admission fees are taxable, Plaintiffs failed to justify the need for eight attorneys; therefore, Defendants submit that $1,200 is excessive."  Defs.' Br. at 6.

Defendants concede too readily that this type of fee is taxable.  In fact, there is a split in the circuits on this issue and, lacking guidance by the Third Circuit, the Clerk is of the opinion that such fees are non-taxable.  In the Church & Dwight case, cited by Plaintiffs, this court summarily granted such fees without providing a basis therefor.  Rather than adopt that holding, the Clerk consistently denies pro hac vice fees on the ground that the opponent should not have to pay for the movant's choice to be represented by counsel not admitted to practice in this district.  See e.g., Warner Chilcott Labs. Ireland Ltd. v. Impax Labs, Inc., Civ. A. Nos. 08-6304, 09-2073, 09-1233, 2013 WL 1716468, at *2-3 (D.N.J. Apr. 18, 2013). In so holding, the Clerk has parted company with the Eighth Circuit and aligned himself with the Ninth and Eleventh Circuits and other district courts within the Third Circuit and beyond.

While a cogent analysis is lacking in both the Eleventh Circuit decision denying taxation, Beck v. Prupis, 162 F.3d 1090, 1100 (11th Cir. 1998), aff'd on other grounds, 529 U.S. 494 (2000), and that of the Eighth Circuit favoring it, Craftsmen Limousine, Inc. v. Ford Motor Co., 579 F.3d 894, 898 (8th Cir. 2009), the Clerk finds persuasive a more recent Ninth Circuit opinion disallowing pro hac vice fees.  In Kalitta Air L.L.C. v. Central Texas Airborne System Inc., the court determined that the phrase "[f]ees of the clerk" refers to those in 28 U.S.C. § 1914, i.e.,

10

those set by the Judicial Conference.   741 F.3d 955, 957-58 (9th Cir. 2013).  As the Judicial

Conference's fee schedule does not cover *pro hac vice* fees, such fees are not fees of the clerk,

within the meaning of § 1920 (1).  The court buttressed its holding by espousing the general

principle, embraced likewise by the Clerk, that § 1920 should be narrowly construed in the wake

of the Supreme Court's admonition in Taniguchi.  See also Awad v. Ziriax, No. CIV-10-1186-M,

2014 WL 1572804, at *1 (W.D. Okla. Apr. 17, 2014).

For these reasons, the Clerk denies all *pro hac vice* fees.

### *Service Fees*

Plaintiffs seek the $1,132.40 cost of service by private process servers as a fee of the

marshal, pursuant to § 1920 (1).  This total includes the $189.90 cost of serving the summons

and complaint on each of the State Defendants and the $942.50 cost of serving subpoenas on

Defendants' witnesses, Richard Levitan, Andrew Dembia, and Paul Sotkiewicz [Dkt. Entry 232

at 39-40], and on PJM Interconnection, LLC. (a regional transmission organization, the

significance of which is discussed in Judge Sheridan's memorandum [Dkt. Entry 305] at 6-8).

Section 1920 (1) explicitly authorizes taxation of the costs of just the "clerk and

marshal." However, this Court has held that the fees of private process servers are taxable under

the combined reading of § 1920 and § 1921, which allows the court to tax as costs the fees for

serving a subpoena on a witness.  Ricoh Corp. v. Pitney Bowes Inc., Civ. A. No. 02-5639,

2007 WL 1852553, at *3 (D.N.J. June 26, 2007); Hurley v. Atlantic City Police Dep't, Civ. A.

Nos. 93-260, 94-1122, 1996 WL 549298, at *8 (D.N.J. Sept. 17, 1996).  Therefore, the Clerk

taxes this **$1,132.40** cost, to which Defendants do not object.   Added to the $350.00 filing fee,

§ 1920 (1) costs are taxed in the total amount of **$1,482.40**.

## IV.   Fees for Printed Transcripts, § 1920 (2)

Plaintiffs request the cost of the printed transcripts of six hearings ($1,225.94), the trial

($20,645.23) and depositions ($26,478.93) as § 1920 (2) "[f]ees for printed or electronically

recorded transcripts necessarily obtained for use in the case."

### *Hearing Transcipts*

The six hearings in question are the following:  1./ December 20, 2011 status conference,

during which Magistrate Judge Arpert addressed Plaintiffs' request for unredacted versions of

the SOCAs and Defendants' invocation of privilege [Dkt. Entry 87], and which culminated

in a stipulation and consent order between the parties [Dkt. Entry 86];  2./ July 31, 2012 hearing

before Judge Sheridan on Plaintiffs', CPV's and the State Defendants' motions for summary

judgment, the rulings of which are reflected in the Court's orders and memorandum [Dkt. Entries

151, 152]; 3./ November 20, 2012 telephonic pretrial conference with Magistrate Judge Arpert,

after which Plaintiffs' counsel prepared the proposed form of order containing the revised case

management schedule [Dkt. Entries 164, 166, 192]; 4./ November 27, 2012 in person status

conference and preliminary hearing to address objections to PJM's compliance with the subpoena

and the amended confidentiality order requested by PJM [Dkt. Entries 165, 193], resulting in

several non-party intervenors' motion to quash the subpoena [Dkt. Entries 168, 172, 176, 203];

5./ January 22, 2013 telephonic status conference [Dkt. Entry 205];[3] and 6./ October 25, 2013 oral

argument on the proposed form of order of the final judgment, Plaintiffs' application for attorney's

---

[3]       The hearings listed by Plaintiffs include one shown as having occurred on
January 16, 2013.  Lustberg Decl. ¶ 6.  As Defendants point out, and per the docket entry of
January 15, 2013, the January 16 status conference was rescheduled to January 22.  The docket
contains no further details regarding this conference.

fees on their preemption claim, and Defendants' joint motion to stay final judgment pending appeal [Dkt. Entry 315].

The taxability of the above-mentioned transcripts turns on their necessity and yet, Plaintiffs do not specify the use of any of the transcripts.  Indeed, Defendants correctly point out that "Plaintiffs provide no explanation whatsoever as to why they needed any of the referenced hearing transcripts and why they were needed on an expedited basis." Defs.' Br. at 7.  Plaintiffs rely entirely upon the prior taxation of transcripts of a motion to dismiss, Markman hearing and summary judgment motion by the Honorable Dickinson R. Debevoise of this Court, who reasoned  that it was his "usual practice to request transcripts of such hearings."  Pharm. Resources, Inc. v. Roxane Labs., Inc., Civ. A. No. 03-3357, 2008 WL 2951173, at *5 (D.N.J. July 25, 2008).

In opposition, Defendants cite to our relevant local rule, L. Civ. R. 54.1(g) (6), which reads:

> The cost of a reporter's transcript is allowable only (A) when specifically requested by the Judge, master, or examiner, or (B) when it is of a statement by the Judge  to be reduced to a formal order, or (C) if required for the record on appeal. Mere acceptance by the Court of a submitted transcript does not constitute a request.  Copies of transcripts for an attorney's own use are not taxable in the absence of a prior order of the Court.  All other transcripts of hearings, pretrials and trials will be considered by the Clerk to be for the convenience of the attorney and not taxable as costs.

Defendants assert that the transcripts are not taxable because they merely served the convenience of Plaintiffs' counsel.  Defs.' Br. at 7.  Alternatively, Defendants maintain that Plaintiffs should not be reimbursed for the cost of expediting the transcripts.  Id.

Under the standard of § 1920 (2), the Clerk must determine if the transcripts were "necessarily obtained for use in the case," such as for a purpose outlined in L. Civ. R. 54.1(g) (6), or rather, obtained for the convenience of counsel.  Courts have denied the

cost of hearing transcripts where note-taking by counsel should have sufficed.  See e.g.,

Ash Grove Cement Co. v. Liberty Mutual Ins. Co., No. 3:09-cv-00239-HZ, 2014 WL 837389,

at *16-17 (D. Or. Mar. 3, 2014) (denying costs of transcripts of scheduling conference and

hearing on motion to compel as unnecessary when note-taking by counsel would have been

sufficient).

       After perusing the docket, the Clerk finds that the transcript of the November 20, 2012

pretrial conference is taxable under L. Civ. R. 54.1(g)(6), because Magistrate Judge Arpert

requested that Plaintiffs' counsel prepare the resulting proposed order.  [Dkt. Entry 164].

While Plaintiffs' counsel indicated during the conference that he was taking notes [Dkt. Entry

166, Tr.32:24-33:1], the order contained the revised case management schedule with numerous

dates and the transcript was necessary to ascertain the accuracy of the schedule.  Therefore,

the Clerk taxes the $208.25 cost of this transcript, which was charged at a $4.25 per page

"expedite 14-day" rate.  [Dkt. Entry 324-7, Ex. D].  It is reasonable to assume that the Court

would have wished to enter the order within a two-week timeframe.

       As for the remaining transcripts, the Clerk agrees with Defendants that Plaintiffs have

not met their burden of showing that they were necessary, rather than convenient for counsel.

Judge Sheridan issued a written, not just an oral, opinion on the summary judgment motions

[Dkt. Entry 151].  Ash Grove Cement Co., 2014 WL 837389, at *16 (written opinion issued after

summary judgment hearing negated the need for transcript); Cf. Hollowell v. Kaiser Found.

Health Plan of the Nw., No. 3:12-cv-2128-AAC, 2014 WL 6750325, at *4 (D. Or. Dec. 1,

2014) (indicating the converse, i.e., that hearing transcript was "necessary for use in the case"

where court issued oral ruling on motion for protective order, indicating on the order, "as stated

on the record"); <u>Honeywell Int'l Inc. v. Nokia Corp.</u>, C.A. No. 04-1337, 2014 WL 2568041, at *8 (D. Del. May 30, 2014) (same).  No appeals were taken from the rulings on the motions for summary judgment, attorney's fees or stay.  Plaintiffs have not shown that the Court requested any of these transcripts or that note-taking by counsel was insufficient.  Accordingly, taxation of the other five transcripts is denied.  Hearing transcripts are taxed in the amount of **$208.25**.

### Trial Transcripts

Plaintiffs seek reimbursement of the $20,645.23 cost of the trial transcripts.  [Dkt. Entry 324-8, Ex. E].  This cost consists of the $20,136.75 fee of the proceedings of April 2-4, 8-12, 18-19 and May 6-8 and the $508.48 cost of those held on May 9 and June 17, 2013 (224 pp. @ $2.27/p.).  While 224 pages were charged at the "ordinary" rate of $2.27 per page, 1,981 pages were charged at the hourly rate of $7.25 per page and 292 page were charged at the expedited rate of $4.85 per page.  Also, the $5,294.80 cost of Realtime is included within this total.  Realtime technology allows the court reporter to instantly translate the spoken word into written form and send it to the attorney's computer for immediate access to the translation.

In contesting this charge, Defendants assert that the length and complexity of the trial do not alone justify this cost, nor does the fact that the transcripts may have been helpful to counsel.  Defs.' Br. at 8.  They further suggest that Plaintiffs' counsel should have sought a court order prior to ordering these transcripts.  <u>Id.</u>

The Clerk rejects Defendants' position that Plaintiffs have failed to show the essential nature of the transcripts.  Plaintiffs point out several uses of the trial transcripts:  to address various issues that arose during the course of the trial; to prepare post-trial findings of fact and conclusions of law required by the Court; and to prepare their opposition to CPV's and the

State Defendants' appeals to the Third Circuit.  Pls.' Br. at 5; Pls.' Reply at 3-4.  Furthermore, the transcripts were required on an expedited basis both because Plaintiffs' counsel cited to them in submissions to the Court during the trial [Dkt. Entries 253, 265] and because the proposed findings of fact and conclusions of law were due 15 days after trial completion [Dkt. Entry 272].  That being said, the Clerk finds that Plaintiffs have not justified, in addition to the hourly copies, the need for Realtime technology, which he views as a non-taxable convenience of counsel.  Accordingly, trial transcripts are taxed in the amount of **$15,350.43** ($20,645.23 – $5,294.80).

### *Deposition Transcripts*

Plaintiffs request the $26,478.93 cost of the printed deposition transcripts of the following 27 deponents:  Andrew Dembia, Richard Levitan, Oden Sherman Knight, Douglas Egan, James Guiliano, Peter Galbrait (Braith) Kelly, Craig Roach, Robert Yardley, Kevin McGowan, Kevin Reuter, Mark Finfrock, Stephen Kamppila, L. Gene Alessandrini, Kim Hanemann, Amy Hamilton, William Massey, Stephen Schleimer, Caleb Stephenson, Robert Willig, Richard Wodyka, Daniel Cregg, Anthony Robinson, William Berg, Joseph Dominguez, Zamir Rauf, Michael Cudwadie and Paul Sotkiewicz.  Lustberg Decl. ¶ 8; [Dkt. Entry 324-9, Ex. F].  As five transcripts were also used for related litigation in the District of Maryland, Plaintiffs request only 50% of the cost of:  the January 1, 2013 depositions of Michael Cudwadie and L. Gene Alessandrini; the January 18, 2013 deposition of Douglas Egan; the February 14, 2013 deposition of Robert Willig; and the February 19, 2013 deposition of Paul Sotkiewicz.  Id. at ¶ 9.

Plaintiffs justify this cost by explaining that the depositions "contain testimony of trial witnesses, were designated and/or entered into the record pursuant to Federal Rule of Civil

Procedure 32, were used to prepare for direct and/or cross-examination, or were otherwise necessary for use in the case." Pls.' Br. at 6.

Defendants object to this cost on the ground that Plaintiffs have not shown how the transcripts were "used at the trial under Fed. R. Civ. P. 32," as required by L. Civ. R. 54.1(g) (7). Defs.' Br. at 8-9. They further specify that Plaintiffs should not be reimbursed for the costs of shipping and handling, ASCII discs, multiple copies or expedited service. Id. at 9-10.

Like hearing transcript costs, deposition transcript costs are taxable only to the extent that the transcripts were "necessarily obtained for use in the case," under § 1920 (2). As Defendants point out, L. Civ. R. 54.1(g) (7) provides that "[i]n taxing costs, the Clerk shall allow all or part of the fees and charges incurred in the taking and transcribing of depositions used at the trial under Fed. R. Civ. P. 32," and further, that "[f]ees and charges for the taking and transcribing of any other deposition shall not be taxed as costs unless the Court otherwise orders."

Defendants' argument that the transcripts were not used at the trial is unavailing. The conflict between the "used at the trial" requirement of our local rule and the broader § 1920 (2) standard of "necessarily obtained for use in the case" was reconciled by the Third Circuit in In re Baby Food Antitrust Litig., 166 F.3d 112, 138 (3d Cir. 1999). The circuit court held therein that a local court rule must yield to a federal rule where the two conflict, and interpreted "necessarily obtained" as allowing for the taxation of the cost of depositions used in deciding summary judgment motions.

Furthermore, despite the "used at the trial" language of our local rule, it is generally accepted by this Court, and others, that "[f]or the costs to be taxable, the depositions need not

17

have been used at trial, and must only 'appear reasonably necessary to the parties in light of a particular situation existing at the times they were taken.'"   See, e.g., Thabault v. Chait, Civ. A. No. 85-2441, 2009 WL 69332, at *7 (D.N.J. Jan 7, 2009) (quoting Datascope Corp. v. SMEC, Inc., No. 81-3948, 1988 WL 98523, at *3 (D.N.J. Sept. 15, 1988)); Smith v. Crown Equip. Corp., No. Civ. A. 97-541, 2000 WL 62314, at *3 (E.D. Pa. Jan. 13, 2000).

Through an independent review of the docket, the Clerk has confirmed that with the exception of the Kelly transcript, all of the transcripts were used in summary judgment briefing [Dkt. Entries 88, 98, 100, 124], were designated for use at trial in the Final Pretrial Order [Dkt. Entry 232 at 43-49], contained testimony of either live trial witnesses [Dkt. Entries 252, 255-60, 263-64, 266-68] or potential liability or expert trial witnesses listed on the Final Pretrial Order [Dkt. Entry 232 at 38-41] and/or were noticed for deposition by Defendants, Lustberg Decl. ¶ 10.  Therefore, all but the Kelly transcript would have appeared reasonably necessary to Plaintiffs at the times they were taken.  See Clerk's decision in Cordis Corp. v. Abbott Labs., Civ. A. No. 07-2265 (D.N.J. June 6, 2014), [Dkt. Entry 162], at 15-16, and cases cited therein. The Clerk can find no indication in the docket of the significance of the deposition of Peter Galbrait (Braith) Kelly, and therefore, the $649.80 requested cost of that transcript is denied. [Dkt. Entry 324-9, Ex. F at 8].

As in the normal course, the Clerk taxes the cost of the original plus one copy ("Orig. & 1") or certified copy of the transcript, plus court reporting fees for attendance and for evening deposition times, "Evening Pages."  All other listed charges are denied, including for handling and delivery, litigation support services, i.e., word index, rough draft, interactive Realtime, rough ASCII, and for exhibits, the uses and needs of which are undefined by Plaintiffs.  Plaintiffs have

18

not shown the necessity of these services and they are either for the convenience of counsel or in the nature of attorney's fees. <u>New Jersey Mfrs. Ins. Group v. Electrolux, Inc.</u>, Civ. A. No. 10-1597, 2013 WL 5817161, **6, 8 (D.N.J. Oct. 21, 2013) and cases cited therein.

Similarly non-taxable are the costs of expedited service, e.g., 2 or 3-5 day delivery and "expedited" rates of $4.75 and $6.00 per page for copies of the Stephenson/Schleimer/Cudwadie and Willig depositions, respectively. It appears that when the Stephenson/Schleimer/Cudwadie depositions were taken on January 3-4, 2012, the ordinary rate of J. H. Buehrer & Associates for copies was $3.00 per page, as reflected in the invoice for the December 21, 2011 Berg/Hamilton/Kamppila depositions. It seems that that rate had increased to $3.50 per page by the time the Willig deposition was taken on February 21, 2013, as indicated in the invoice for the January 16, 2013 Rauf deposition. These adjustments will be made below.

Also deducted are what appear to be either duplicate charges for the Cregg ($373.50) and Robinson ($180.00) depositions or charges for additional copies, which are non-taxable. This can be seen by comparing J. H. Buehrer & Associates' invoice no. 9894 [Dkt. Entry 324-9, Ex. F at 22] with their invoice no. 9895, <u>id.</u> at 12.

With the foregoing in mind, the Clerk taxes the following deposition charges, in the order in which they appear in Dkt. Entry 324-9, Exhibit F[4]:

| **Deponent** | **Taxed Amount** |
| --- | --- |
| **Andrew Dembia, 12/15/11** | |
| Certified transcript | $   784.70 |

---

[4]    The entries below marked with an asterisk (*) are those for which Plaintiffs seek only half of the invoiced charges due to related litigation in the District of Maryland. Lustberg Decl. ¶ 9. Accordingly, the taxed amounts shown constitute 50% of the invoiced amounts allowed.

19

| **Deponent** | **Taxed Amount** |
|---|---|
| **Andrew Dembia, 2/12/13** | |
| Orig. & 1 | $   658.35 |
| Reporter attendance | $   110.00 |
| | |
| **Richard Levitan** | |
| Orig. & 1 | $ 1,089.00 |
| Reporter attendance | $   110.00 |
| | |
| **Oden Sherman Knight** | |
| Orig. & 1 | $   888.25 |
| Reporter attendance | $     90.00 |
| | |
| **Douglas Egan*** | |
| Orig. & 1 | $   680.00 |
| Evening pages | $     13.00 |
| Reporter attendance | $     45.00 |
| Reporter attendance, evening session | $     33.75 |
| | |
| **James Giuliano** | |
| Orig. & 1 | $   163.35 |
| Reporter attendance | $   110.00 |
| | |
| **Craig Roach** | |
| Orig. & 1 | $ 1,381.25 |
| Reporter attendance | $     90.00 |
| | |
| **Robert Yardley** | |
| Orig. & 1 | $   927.00 |
| Reporter attendance | $     90.00 |
| | |
| **Kevin McGowan** | |
| Transcript copy | $   204.00 |
| | |
| **Kevin Reuter** | |
| Transcript copy | $     87.00 |
| | |
| **Mark Finfrock** | |
| Orig. transcript | $   301.50 |
| | |
| **Anthony Robinson, 1/24/13** | |
| Orig. transcript | $   180.00 |

| **Deponent** | **Taxed Amount** |
|---|---|

**Daniel Cregg, 1/24/13**
Orig. transcript                                     $   373.50

**William Berg, Amy Hamilton &**
**Stephen Kamppila**
Transcript copy                                     $   369.00

**Michael Cudwadie & L. Gene Alessandrini***
Certified transcript                               $   398.13

**Kim Hanemann**
Orig. transcript                                     $   310.50

**Joseph Dominguez**
Orig. transcript                                     $   378.00

**William Massey**
Certified transcript                               $   793.00
Evening pages                                       $     11.25

**Caleb Stephenson, Stephen Schleimer &**
**Michael Cudwadie**
Transcript copy, unexpedited - 116 pp. @ $3.00/p.   $   348.00

**Robert Willig, 2/14/13***
Certified transcript                               $   489.13

**Robert Willig, 2/21/13**
Transcript copy, unexpedited – 93 pp. @ $3.50/p.    $   325.50

**Richard Wodyka**
Certified transcript                               $   539.50

**Daniel Cregg, 12/16/11**
Certified transcript                               $   126.85
Certified transcript (confidential)                $   135.70

**Anthony Robinson, 12/16/11**
Certified transcript                               $     82.60

**Zamir Rauf**
Transcript copy                                     $   199.50

| **Deponent** | **Taxed Amount** |
|---|---|
| **Paul Sotkiewicz*** | |
| Orig. & 1 | $   584.38 |
| Evening pages | $     13.00 |
| Reporter attendance | $     45.00 |
| Reporter attendance, evening session | $      33.75 |

**Total:**                                                    **$13,592.44**

     Combining the costs of the hearing ($208.25), trial ($15,350.43), and deposition ($13,592.44) transcripts, pursuant to § 1920 (2), transcripts are taxed in the total amount of **$29,151.12**.

### V.   Witness Fees, § 1920 (3)

     Pursuant to § 1920 (3) and 28 U.S.C. §1821, Plaintiffs ask the Clerk to tax witness fees in the total amount of $10,468.31, after reducing the requested amount by $1,466.20 in their reply.  Pls.' Reply at 5, n.4. This amount includes the $40 statutory *per diem* witness fee as well as subsistence and travel costs for witnesses produced for deposition and at trial.  Lustberg Decl. ¶¶ 10-17.  The requested fees are set forth in Plaintiffs' charts in "Attachment 1 to AO 133: Deposition Witnesses," and "Attachment 2 to AO 133:  Trial Witnesses," [Dkt. Entry 324-1 at 3-5], and receipts are provided in Exhibit G, [Dkt. Entry 324-10] and Exhibit H, [Dkt. Entry 324-11]. Such costs were halved in those instances where the fees were also attributable to the related litigation in the District of Maryland, i.e., Mr. Alessandrini's January 14, 2013 deposition and Dr. Willig's February 14, 2013 deposition, both of which occurred in Washington, D.C. Pls.' Br. at 6, n.4.; Attach. 1 [Dkt. Entry 324-1], n.1, n.2.

     Plaintiffs cite the relevant legal standards, L. Civ. R. 54.1(g) and 28 U.S.C. § 1821. Pls.' Br. at 6-8.  Our local rule provides:

> (1) The fees of witnesses for actual and proper attendance shall be allowed, whether such attendance was voluntary or procured by subpoena. The rates for witness fees, mileage and subsistence are fixed by statute (see 28 U.S.C. § 1821). Witness fees and subsistence are taxable only for the reasonable period during which the witness was within the District. Subsistence to the witness under 28 U.S.C. § 1821 is allowable if the distance from the courthouse to the residence of the witness is such that mileage fees would be greater than subsistence fees if the witness were to return to his or her residence from day to day.

L. Civ. R. 54.1(g) (1).

Local Civil Rule 54.1(g) (7) also provides that "[f]ees for the witness at the taking of a deposition are taxable at the same rate as for attendance at trial. (See L. Civ. R. 54.1(g) (1).)"

Our applicable local rule incorporates 28 U.S.C. § 1821 by reference, and thus, allowable witness fees are controlled by § 1821. That statute provides for the payment of witnesses' fees and allowances for their attendance in federal court. 28 U.S.C. § 1821(a) (1). Subsection (b) therein allows a $40 per day attendance fee "for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance." Subsection (c) provides for the actual expenses of the most economical common carrier that is reasonably available, traveling the shortest practical route, as well as "[a]ll normal travel expenses within and outside the judicial district," including parking fees, tolls and taxicab fares. Also, the mileage allowance for travel by privately owned vehicle is that prescribed by the Administrator of General Services ("GSA"), pursuant to 5 U.S.C. § 5704. Subsection (d) allows a subsistence fee for a required overnight stay, provided that the *per diem* rate does not exceed the allowance established by the GSA, pursuant to 5 U.S.C. § 5702(a), in the area of attendance.

Defendants do not take issue with the witnesses listed by Plaintiffs. However, they do assert that Plaintiffs' request is excessive, principally because those witnesses did not travel by

automobile, train or plane at "the most economical rate reasonably available," as required under § 1821(c).  Defs.' Br. at 10-15.  Defendants complain that certain witnesses used the more expensive Acela Amtrak service, rather than the Northeast Corridor Amtrak service, flew first-class or used costly limousine services.  They object also on the grounds that some witnesses did not travel by the shortest route possible or stayed more nights than are legally taxable.  Id. Defendants further criticize Plaintiffs' proofs as lacking or deficient, arguing that in certain instances, Plaintiffs provide no receipt or the date on the receipt does not match the date of the deposition.

The Clerk agrees with Defendants on many of these points and makes certain adjustments below, where necessary, in taxing the combined deposition and trial fees for each witness.

### *Deposition Witnesses Only*

Plaintiffs seek reimbursement of the fees of the following witnesses who testified at deposition only.

#### *Kim Hanemann, Stephen Kamppila, Kevin McGowan, Kevin Reuter, Stephen Schleimer and Caleb Stephenson*

Plaintiffs request just the $40 *per diem* fee for the one-day attendance at deposition of the above-listed witnesses and Defendants do not object.  Attendance fees for these six witnesses are granted in the amount of **$240.00**.

#### *Amy Hamilton*

In addition to the $40 *per diem* fee for her one-day attendance at deposition, Plaintiffs request the $13.00 parking fee, for which they have provided the receipt.  [Dkt. Entry 324-10, Ex. G at 29].  Fees for this witness, to which Defendants do not object, are taxed in the amount of **$53.00**.

### *L. Gene Alessandrini*

The requested fees for this witness' one-day deposition in Washington, D.C. on January 14, 2013 have been halved by Plaintiffs, as being related to the Maryland litigation. Supporting documentation shows that this witness traveled round-trip between Wilmington, DE and Washington, D.C. via the Acela train, business class, at the cost of $194.00. He left on the day before his deposition, January 13, stayed overnight in Washington, D.C., and returned to Wilmington on the evening of his deposition.

Defendants correctly observe that they should not have to pay for the more costly transportation used by this witness. See e.g., Osseiran v. Int'l Fin. Corp., Civ. A. No. 06-336, 2014 WL 4694815, at *4 (D.D.C. Sept. 22, 2014) (noting that "[b]usiness-class fare is not 'the most economical rate reasonably available,'" and, finding no other means of determining that economical rate, reduced requested airfare by 50%); Jacoby Airplane Crash Litig., Civ. A. No. 99-6073, 2008 U.S. Dist. LEXIS 118037, at *12-14 (D.N.J. Oct. 7, 2008) (same). The Clerk has determined that, currently, the cost of an Amtrak Northeast Regional coach ticket, which this witness could have used,  is 70% of that of an Acela business class ticket, during the same time frame. http://tickets.amtrak.com/itd/amtrak#.  Before halving the costs, they should be taxed as follows:   train ticket - $135.80 ($194.00 x .7); two days of attendance fees - $80.00; train station parking - $18.00; taxicab fares - $31.00; one night's lodging at the GSA rate for Washington, D.C. in January 2013, www.gsa.gov/portal/category/100120 – $183.00; meals for January 14 at the GSA "M & IE" rate, id. - $71.00; and meals for January 13 at the GSA travel day rate, id. -- $53.25.   These total $572.05.  Halved, they amount to **$286.03**.

### *Mark Finfrock*

The submitted receipts indicate that this witness took the Acela train, business class,

25

from Washington, D.C. to Newark, on January 23, 2013, the day before his deposition, and

returned the same way to Washington, D.C. on January 24, the day of his deposition.  The Clerk

will apply the 70% discount, explained above, to the train cost of $417.00, and taxes:  train

ticket - $291.90 ($417.00 x .7); two days of attendance fees - $80.00; one night's lodging at

the GSA rate that applied to Newark in January 2013, www.gsa.gov/portal/category/100120 -

$120.00; meals for January 24 at the GSA "M & IE" rate - $61.00; meals for the January 23

travel day at the GSA rate, id. – $45.75.  Fees are taxed in the total amount of **$598.65** for this

witness.

### *William Berg*

Plaintiffs request the cost of this witness' attendance and Acela business class train ticket,

roundtrip between Wilmington, DE and Newark, for his December 21, 2011 deposition.  No

subsistence fees are requested or due, as this witness returned on the same day.  Defendants

argue not only that Mr. Berg could have purchased a less expensive Northeast regional coach

ticket instead, but that Plaintiffs have supplied only ticket stubs, not receipts.  The information on

the ticket stubs, i.e., the witness' name, the date, the points of origin and destination, the ticket

class and the cost ($96.00 + $112.00 = $208.00), are proof enough for the Clerk, who applies the

70% discount again, and taxes:  train ticket – $145.60 ($208.00 x .7); and a one day attendance

fee - $40.00; or a total of **$185.60**.

### *Richard Wodyka*

This witness testified in Washington, D.C. on March 1, 2013.  He traveled from

Wilmington, DE on that date on an Acela business class ticket, which cost $97.00.  While he

returned the following day on the less expensive Northeast regional line, his $71.00 business

26

class ticket cost $24.00 more than the $47.00 coach seat, per the submitted receipt.  Plaintiffs request the attendance fee and travel costs in the amount of $253.95, although the receipts supplied only add up to $200 ($168.00 train + $22.00 parking + $10.00 taxicab).  They do not ask for subsistence fees.  Applying the 70% discount to the Acela travel to Washington, D.C., and deducting the $24.00 surcharge for the business class return ticket, the Clerk grants:  train ticket -- $114.90 (($97.00 x .7) + $47.00);  two days of attendance fees -- $80.00; parking in Wilmington -- $22.00; and taxicab fare -- $10.00; totaling **$226.90**.

### *Deposition and Trial Witnesses*

Plaintiffs ask for the fees of the following witnesses who testified both at deposition and trial:  Daniel Cregg, Michael Cudwadie, Joseph Dominguez, Zamir Rauf, Anthony Robinson, William Massey and Robert Willig.  Receipts for trial witness fees are set forth in Exhibit H, [Dkt. Entry 324-11].

### *Daniel Cregg*

Plaintiffs request just the $40 *per diem* fee for the attendance at depositions and trial of this witness, a resident of New Jersey.  Mr. Cregg attended two days of depositions, on December 16, 2011 and January 24, 2013, and one day of trial, on April 10, 2013.   Fees for this witness are taxed in the amount of **$120.00**.

### *Anthony Robinson*

Attendance fees alone are requested in connection with the deposition and trial testimony of this witness from New Jersey.  The Clerk grants $80 for two days of deposition attendance, on December 16, 2011 and January 24, 2013, and $40 for his trial attendance on April 10, 2013, or a total of **$120.00**.

27

*Michael Cudwadie*

This witness was deposed on January 3 and/or 4, 2012 in Newark, to which he drove

in his car, presumably, from Pennsylvania (listed on Attachs. 1 & 2 as the state of his residence).

Plaintiffs ask for two days' attendance, $181.00 in subsistence, and $114.13 in travel costs,

which consist of $92.13 for mileage, $21.00 for parking and a $1.00 toll.  Defendants object

to taxing the mileage cost, as the origin of the witness' trip and therefore, the mileage, are

unknown, as is the rate used by Plaintiffs.  The Clerk agrees and denies this cost.  Deposition

costs are taxed as follows:  two days of attendance fees -- $80.00; one night's lodging at the

GSA rate applicable to Newark in January 2012, www.gsa.gov/portal/category/100120   --

$120.00; one day of meals at the GSA rate, id. -- $61.00; one travel day of meals at the GSA

rate, id. – $45.75; parking -- $21.00; and toll -- $1.00; or a total of **$328.75**.

Michael Cudwadie testified at the trial in Trenton on one day, April 11, 2013.  The

GSA *per diem* rates for Trenton at the time of trial were:  $119 for lodging; $61.00 for meals;

and  $45.75 for travel day meals.  In addition to attendance fees and subsistence, Plaintiffs

request $123.70 in travel costs, which include an $85.88 mileage fee, on top of parking and tolls.

Defendants make the same objection regarding the mileage cost, which Plaintiffs fail to explain.

The Clerk accepts Defendants' argument and taxes just:  two days of attendance fees -- $80.00;

one night's lodging -- $119.00; one day of meals -- $61.00; one travel day of meals -- $45.75;

parking in Trenton -- $7.00; and tolls -- $10.48.  The total is **$323.23**.

*Joseph Dominguez*

This witness sat for his deposition in Newark on January 22, 2013, and Plaintiffs

ask for the cost of attendance, his taxicab fare ($24.33) and his Acela train ticket from

Washington, D.C. ($249.00) for his same-day trip.  Accepting Defendants' objection to travel via the Acela train, the Clerk again taxes the cost of the train ticket at 70%. Mr. Dominguez's deposition costs are taxed at:  train ticket -- $174.30 ($249.00 x .7); a one day attendance fee – $40.00; and cab fare -- $24.33, or a total of **$238.63**.

  This witness traveled on April 2, 2013 to attend trial on April 3 and April 4, when his testimony was anticipated.  Attach. 2, n.3.  He returned home on April 4.  He traveled back north from Maryland on April 7 to testify when trial resumed on April 8, the day he also left for home. Plaintiffs request four days of attendance and subsistence, as well $737.00 in travel costs. Piecing together three Amtrak "Lost Receipt Forms" and receipts, the Clerk believes that on April 2, this witness used Uber car service ($44.00) for the drive from his Bethesda home to the Washington, D.C. train station, where he took the Amtrak train ($174.00) (presumably, Acela, based upon the price) to Newark, and then used Uber ($187.00) for the drive from Newark to Princeton, where he stayed the nights of April 2 and 3.  On April 4, he took the Amtrak ($146.00) (again, presumably, Acela) from Philadelphia to Washington, D.C. and used Uber ($40.00) for the drive from the train station to home.  In connection with this witness' second trip back north, Plaintiffs have submitted just the invoice from the Hyatt Regency Princeton for April 7 and 8, the Lost Receipt Form for the Amtrak ($109.00) from Philadelphia to Washington, D.C. on April 8, and the Uber invoice ($37.00) for car service from the train station to his home.  In addition to this $737.00 travel cost, Plaintiffs ask for attendance and subsistence, or a total of $1,617.00.

  Like Defendants, the Clerk finds that this witness incurred unnecessary expenses by taking a circuitous route.   Also, while Mr. Dominguez may have desired to stay in Princeton,

rather than Trenton, Defendants do not have to bear the cost of that choice.  Section 1821(c) (1) allows for the actual expense of travel "on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance."  The witness could have purchased Amtrak coach train tickets for the trip between Washington, D.C. and Trenton at the cost of $126.00 each way.  Accordingly, for the two separate trial attendances in Trenton, the Clerk grants:  five days of attendance fees – $200.00; four train tickets to/from Trenton – $504.00 ($126.00 x 4); three nights' lodging (Apr. 2, 3, 7) at the GSA rate then-applicable to Trenton – $357.00 ($119.00 x 3); three days of meals -- $183.00 ($61.00 x 3); two travel days of meals – $91.50 ($45.75 x 2); and Uber car fare – $121.00 ($44.00 + $40.00 + $37.00). This witness' costs total **$1,456.50**.

### Zamir Rauf

This witness sat for a deposition in Newark on January 16, 2013.  In connection therewith, Plaintiffs originally requested:  three days' attendance ($120.00); two days of subsistence ($362.00) at the then-applicable GSA *per diem* rate for Newark of $181.00 ($120.00 for lodging and $61.00 for meals); and travel costs ($2,770.57).  Receipts covering the travel are for:  two first-class flight tickets from Houston to LaGuardia Airport, costing $1,246.40 each, one for January 14, 2013 and one for January 16, 2013;  car service for a trip from LaGuardia Airport to the Ritz Carlton, New York City, charged at $167.52, and cab fare for January 15, 2013, costing $110.25, presumably from the Ritz Carlton to Newark for deposition preparation.

In connection with Mr. Rauf's trial attendance on April 11 and 12, 2013, Plaintiffs have submitted a receipt for a first-class flight from Houston to Newark on April 11, 2013,

costing $1,575.40.  In addition to this travel cost, Plaintiffs ask for $80.00 in attendance fees and one day's subsistence at the correct GSA rate for Trenton of $180.00 ($119.00 for lodging and $61.00 for meals) or the total amount of $1,835.40.

In response to Defendants' objection to taxing first-class flight tickets, Plaintiffs reduced their request by $1,466.20.  Pls.' Reply at 4-5, n. 4.  They show that the cost of a one-way refundable coach class ticket from Houston to Newark in April 2014 was $863.00.  Id. at n.4, Ex. B.

Like Mr. Dominguez, this witness chose more luxurious accommodations than were necessary and under the statute, Defendants are not required to foot that bill.  Rather than flying first-class into LaGuardia to stay at the Ritz Carlton on Central Park South, this witness could have flown via coach fare directly into Newark to attend his deposition in Newark.  For both the deposition and trial fees, the Clerk will use the $863.00 figure provided by Plaintiffs.

Considering that the flight alone between Newark and Houston lasts more than four hours, the Clerk agrees that it is reasonable to grant an extra two days of attendance for travel, in addition to the day of attendance for deposition, and Defendants do not object to this.  Deposition fees are taxed as follows:  three days of attendance fees -- $120.00 ($40.00 x 3); two coach flight tickets between Houston and Newark -- $1,726.00 ($863.00 x 2); two nights' lodging at the then-applicable GSA rate for Newark – $240.00 ($120.00 x 2); one day of meals at the GSA rate – $61.00; two travel days of meals at the GSA rate of $45.75 -- $91.50 ($45.75 x 2).  The expensive car fares are denied.  Deposition fees are taxed at **$2,238.50**.

For this witness' trial attendance, Plaintiffs request only two days of attendance fees and one day of subsistence.  Documentation shows that he flew into Newark on the first

31

day of his trial testimony, and he must have flown back home on the second day of his trial attendance.  The Clerk taxes:  two days of attendance fees -- $80.00 ($40.00 x 2); two coach flight tickets -- $1,726.00 ($863.00 x 2); one nights' lodging at the GSA rate for Trenton – $119.00; two days of meals at the GSA rate -- $122.00 ($61.00 x 2).  These total **$2,047.00**.

_William Massey_

Just a **$40.00** attendance fee is requested for this witness' deposition on February 26, 2013.  This unopposed fee is granted.

For his trial attendance, this witness traveled north from Washington, D.C. on April 1, 2013, testified on April 3 and 4, during which time he stayed overnight in Princeton, and returned home on April 4.  Plaintiffs seek reimbursement of:  $120.00 for three days of attendance; $360.00 for two days of subsistence at the correct GSA _per diem_ rate of $180.00, with lodging ($119.00) and meals ($61.00) combined; and $727.93 in travel costs, consisting of $272.00 for Amtrak ($148.00 + $124.00), $13.00 for parking in Trenton, $88.00 for parking at Union Station, Washington, D.C. (4 days at $22.00/day), and $354.93 for car rental.

Defendants' point, like that made in connection with Mr. Dominguez's trial attendance, is well-taken.  Plaintiffs are not entitled to these unnecessary travel costs under § 1821.  This witness could have merely taken the train from Washington, D.C. directly to Trenton at the cost of $126.00 per ticket, instead of this circuitous route, which entailed an expensive rental car fee. The Clerk grants:  three days of attendance fees -- $120.00; two trains tickets -- $252.00 ($126.00 x 2); two nights' lodging at the GSA rate -- $238.00 ($119.00 x 2); two days of meals at the GSA rate -- $122.00 ($61.00 x 2); one travel day of meals at the GSA rate -- $45.75; and three days of parking in Washington, D.C. -- $66.00 ($22.00 x 3).  This witness' trial attendance fees are taxed in the amount of **$843.75**.

*Robert Willig*

This witness from New Jersey testified at his deposition in Washington, D.C. on February 14, 2013 and in Trenton on February 21, 2013. Plaintiffs request only half of the taxable costs of his February 14 deposition, as being related to the Maryland litigation.

Before halving the costs, for the February 14 deposition, Plaintiffs ask for three days of attendance, and subsistence, which appear to include arrangements for preparation with counsel. They also ask for $155.00 in car and taxi fares and $239.00 for the cost of the train. As Defendants point out, these requested fees are either excessive or undocumented. The Clerk does not tax any of the travel costs, as the travel point of origin is unspecified and no receipts have been provided. Only attendance and subsistence for one travel day and one full day are taxed, as follows: two days of attendance fees – $80.00; one night's lodging at the then-applicable GSA rate for Washington, D.C. -- $183.00; one day of meals at the GSA rate – $71.00; one travel day of meals at the GSA rate – $53.25. This total of $387.25 amounts to $193.63, when halved.

For the February 21, 2013 deposition in Trenton, Plaintiffs request one day of attendance and $130.00 for car service, although the amounts of $62.54 and $77.47 indicated on the submitted statement total $140.01. In any event, the statement date of February 23 does not match the deposition date and again, no receipts have been provided. Just a one day attendance fee of $40.00 is taxed on connection with this deposition. Deposition costs are taxed in the total amount of **$233.63** ($193.63 + $40.00).

For Dr. Willig's trial attendance on April 9 and 10, 2013, Plaintiffs seek just two days of attendance fees, or **$80.00**, to which Defendants do not object. This amount is allowed.

33

### *Summary of Witness Fees*

| **Witness** | **Taxed Amount** |
| --- | --- |
| Kim Hanemann | $    40.00 |
| Stephen Kamppila | $    40.00 |
| Kevin McGowan | $    40.00 |
| Kevin Reuter | $    40.00 |
| Stephen Schleimer | $    40.00 |
| Caleb Stephenson | $    40.00 |
| Amy Hamilton | $    53.00 |
| L. Gene Alessandrini | $  286.03 |
| Mark Finfrock | $  598.65 |
| William Berg | $  185.60 |
| Richard Wodyka | $  226.90 |
| Daniel Cregg – Deposition: | $    80.00 |
| "        "   -- Trial: | $    40.00 |
| Anthony Robinson – Deposition: | $    80.00 |
| "        "        -- Trial: | $    40.00 |
| Michael Cudwadie – Deposition: | $  328.75 |
| "        "        -- Trial: | $  323.23 |
| Joseph Dominguez – Deposition: | $  238.63 |
| "        "        -- Trial: | $ 1,456.50 |
| Zamir Rauf – Deposition: | $ 2,238.50 |
| "        "  -- Trial: | $ 2,047.00 |

34

| Witness | Taxed Amount |
|---|---|
| William Massey – Deposition: | $    40.00 |
| "        "        -- Trial: | $   843.75 |
| Robert Willig – Deposition: | $   233.63 |
| "        "     -- Trial: | $    80.00 |
| **Total:** | **$ 9,660.17** |

Under § 1920 (3), witness fees are taxed in the total amount of **$ 9,660.17**.

## VI.    Exemplification and Cost of Making Copies, § 1920 (4)

Plaintiffs' request, under § 1920 (4), for the $52,630.97 cost of exemplification and of making copies, consists of:  the $1,886.25 cost of in-house copying for summary judgment briefing, which entailed over thirty exhibits; the $29,099.72 cost of third-party copying of trial exhibits; and the $21,645.00 cost of demonstratives for use at trial.  Pls.' Br. at 8-9.

In addition to arguing that Plaintiffs have failed to distinguish Commerce Clause copies from Supremacy Clause copies, Defendants contend that Plaintiffs have not shown which copies were "necessarily obtained for use in the case," as opposed to being for the convenience of counsel.  Defendants further contend that Plaintiffs do not satisfy the dual requirements of our local rule and that the copying rates charged are excessive.  Defs.' Br. at 15-17.

As Defendants observe, our local court rule imposes a two-part condition for the taxation of copies:

> The fees for exemplification and copies of papers are taxable when (A) the documents are admitted into evidence or necessarily attached to a document required to be filed and served in support of a dispositive motion, and (B) they are in lieu of originals which are not introduced at the request of opposing counsel.  The cost of copies submitted in lieu of originals because of convenience to offering counsel or his or her

35

> client is not taxable.  The cost of copies obtained for counsel's own use
> is not taxable.

L. Civ. R. 54.1(g) (9).

However, this Court has previously allowed the taxation of the cost of copies without strict adherence to the dual requirements of L. Civ. R. 54.1(g) (9).  In the Hurley case, the court noted that departure from the local rule would be permissible, although only to the extent consistent with § 1920 (4). 1996 WL 549298, at *3, n.5.  See also Thabault, 2009 WL 69332, at *13-14; Reichhold, Inc. v. U.S. Metals Ref. Co., Civ. A. No. 03-453, 2009 WL 3761828, at *4 (D.N.J. Nov. 6, 2009).  This is in keeping with the Third Circuit's statement that a local court rule must yield to a federal rule where the two conflict.  In re Baby Food Antitrust Litig., 166 F.3d at 138.

Accordingly, this Court requires only satisfaction of the test of § 1920 (4), i.e., that the copies have been "necessarily obtained for use in the case."  The Clerk must determine the reason for these materials and deny taxation if they were made merely for counsel's convenience.  However, as this Court stated in Thabault, "[c]osts are taxable under this provision 'even if the documents are not offered into evidence at trial.'"  2009 WL 69332, at *14 (quoting Hurley, 1996 WL 549298, at *3).

### *In-House Copies*

The description on the submitted invoices of the black and white copies made for Plaintiffs' summary judgment briefing is "Duplicating:  Duplication of SJ motion papers for submission to court and attorney reference. 2,840 B & W copies."  The same description is shown for the black and white copies of their reply papers, which numbered 2,465 thereon.  Those copies were charged at the rate of $.25 per page.  [Dkt. Entry 324-12,

Ex. I, at 2-3]. The invoice also describes charges for color copying as: "Color Duplicating: Duplication of SJ reply papers for submission to court and attorney reference. 560 color copies." The color copies were charged at the rate of $1.00 per page. Id. at 3.

The supporting invoices themselves indicate that some copies were made for "attorney reference," and were therefore for the convenience of counsel. These are non-taxable. Conversely, copies which were required to be filed with the Court or provided to opposing counsel were necessarily obtained for use in the case under § 1920 (4). Shukh v. Seagate Tech., LLC, Civ. No. 10-404, 2014 WL 4348199, at *6 (D. Minn. Sept. 2, 2014) and cases cited therein (courtesy copies which are required to be filed with the court are necessarily obtained, not for the convenience of counsel, and are taxable). This is a generally accepted principle. See e.g., Metropolitan Van and Storage, Inc. v. United States, 101 Fed. Cl. 173, 203 (Fed. Cl. 2011); Friedlander v. Nims, 583 F. Supp. 1087, 1088 (N.D. Ga. 1984); Universal City Studios, Inc. v. Nintendo Co., Ltd., No. 82 Ci. 4259, 1986 WL 11462, at *2 (S.D.N.Y. Oct. 6, 1986).

In this judicial district, one courtesy copy of all papers filed in support of or in opposition to a motion must be submitted to the Judge's chambers. L. Civ. R. 7.1 (g). Otherwise, documents are filed and served on the parties through the Court's CM/ECF System. A hard copy of motion papers need not be served on opposing counsel. Per the Clerk's count from the docket, these copies number 1,277. [Dkt. Entries 88, 124]. Defendants are correct in stating that a reasonable copying rate for black and white copies is $.10 to $.15 per page, not the $.25 per page charged on Plaintiffs' invoices. Interfaith Community Org. v. Honeywell, Int'l, 426 F.3d 694, 717 (3d Cir. 2005). Also, Plaintiffs fail to explain why color copies were necessary, particularly when they were invoiced at $1.00 per page. The bulk of the exhibits attached to

37

their motion papers are reports, emails, transcripts and the like.  The Clerk taxes 1,277 pages

at the rate of $.15 per page, or **$191.55** for in-house copies made in connection with Plaintiffs'

summary judgment briefing.

### *Third-Party Copying of Trial Exhibits*

The requested cost of copies also includes the $29,099.72 fee of a third-party, DTI, for

making copies of trial exhibits.  In addition to the cost of tabs and binders, Plaintiffs ask for the

cost of 94,934 black and white blowbacks, charged at $.08 per page, and 27,206 color

blowbacks, invoiced at $.75 per page.

While the DTI invoices show the total number of pages copied and the copying rate,

there is no indication of the number of copies made of each exhibit.  However, the Clerk

appreciates that the trial exhibits in this rather complicated case were voluminous.  Plaintiffs'

revised exhibit list [Dkt. Entry 245] shows 416 exhibits.  Also, the terms of the Final Pretrial

Order [Dkt. Entry 232 at 42] required that the parties supply copies of their trial exhibits to

each other and a bench book of exhibits to the Court.

Nor is there any indication whether the trial exhibits copied were just Plaintiffs',

to supply to defense counsel and the Court, and not Defendants' exhibits.  If Plaintiffs had

copies of Defendants' exhibits made, they would have been made merely for the convenience

of counsel, since defense counsel would have provided its trial exhibits to Plaintiffs under the

terms of the Final Pretrial Order.  Plaintiffs' counsel rather vaguely states, "Plaintiffs hired an

outside vendor, DTI, to make copies of the trial exhibits in this case."  Lustberg Decl. ¶ 20.

Plaintiffs also just describe this cost as "$29,099.72 for vendor-generated copying costs

associated with the trial exhibits in this case, many of which were admitted into evidence."

Pls.' Br. at 9.  Accordingly, the Clerk taxes 50% of the cost of these blowbacks, after deducting

the cost of binders and tabs, which are non-taxable.  Yong Fang Lin v. Tsuru of Bernards, LLC,

Civ. A. No. 10-2400, 2011 WL 2680577, at *5 (D.N.J. July 8, 2011) (disallowing cost of exhibit

binders as general overhead cost); Laura P. v. Haverford School Dist., Civ. A. No. 07-5395,

2009 WL 1651286, at *9 n.10 (E.D. Pa. June 12, 2009) (same); Close-Up Int'l, Inc. v. Berov,

Civ. A. No. 02-CV-2363, 2007 WL 4053682, at *11 (E.D.N.Y. Nov. 13, 2007) (denying costs of

trial exhibit binders and tabs as being subsumed in attorney's fees) and cases cited therein.

The cost of trial exhibits is taxed in the amount of **$13,999.61** ($27,999.22 x .5).

### *Demonstratives*

In addition to the cost of trial exhibits, Plaintiffs' seek reimbursement of the $21,645.00

fee of Tangent Computer Solutions, LLC ("Tangent") to prepare unspecified "demonstratives"

for use at the trial.  Plaintiffs' counsel explains, "the vast majority were used during trial to

illustrate factual evidence and/or in further support of witness testimony in order to assist the

Court. The demonstratives were necessary in order for Plaintiffs to explain the complex issues

in the case."  Lustberg Decl. ¶ 21.

The Clerk explored the taxability of demonstratives at length in his decision in

Warner Chilcott Labs. Ireland Ltd. v. Impax Labs., Inc., Civ. A. Nos. 08-6304, 09-2073,

09-1233, 2013 WL 1876441, at *13-17 (D.N.J. Apr. 18, 2013), after the Third Circuit's ground-

breaking decision in the case of Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158

(3d Cir.), cert. denied, 133 S. Ct. 233 (2012).  Basically, the cost of demonstratives falls under

the other prong of § 1920 (4) for "exemplification," which is yet undefined in the Third Circuit.

However, the Third Circuit's Race Tires decision, which addresses the taxability of electronic

discovery as "the costs of making copies" under § 1920 (4), evinces a clear intent by the Third Circuit to pull in the reins on taxable costs.

The Clerk noted in his <u>Warner</u> <u>Chilcott</u> opinion, "[l]acking a clear directive from the Third Circuit, the Clerk must take cues both from the Circuit Court's analysis in <u>Race</u> <u>Tires</u> and the United States Supreme Court's most recent application of § 1920 in the <u>Taniguchi</u> case," which "undoubtedly proscribe exorbitant cost awards which contravene the Congressional intent in enacting a statute that limits costs to specified categories."  2013 WL 1876441 at *14.  The Clerk distinguished between the intellectual effort required to produce demonstratives from their actual physical preparation, and denied the fees of specialists charged at  rates of $195.00, $225.00 and $245.00 per hour.

In a companion opinion, the Clerk further cited to the Supreme Court's comment in <u>Taniguchi</u>, 132 S. Ct. at 2006, that "[t]axable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators."  <u>Warner Chilcott Labs. Ireland Ltd.</u>, 2013 WL 1716468, at *12.

Here, Plaintiffs' counsel describes this requested cost as one for "physically" preparing demonstratives.  Lustberg Decl. ¶ 21.  However, the supporting invoices are very vague and do not give a clear indication of the services provided by Tangent.  The invoices merely use the descriptions of "Demonstrative Exhibits," "Demonstrative Exhibits & Revisions," "Exhibit Labels," "Demonstrative Exhibits & Exhibits Labeling," and "Demonstratives." [Dkt. Entry 324-13 at 2, 4, 5].  The Clerk does not even know what the demonstratives were, be they graphics, computer animations or videos.  Furthermore, these services, charged at the rate of $195.00 per hour, are those of computer "experts," which the Supreme Court has warned are nontaxable.

Based upon the foregoing, the Clerk denies all requested costs of the demonstratives.

Under § 1920 (4), the Clerk taxes the fees for exemplification and costs of making copies in the amount of **$14,191.16** ($191.55 + $13,999.61).

### VII.   Docket Fees, § 1920 (5)

The penultimate item requested by Plaintiffs is the docket fee provided in 28 U.S.C. § 1923 and allowed pursuant to § 1920 (5).  Section 1923 (a) provides that "[a]ttorney's and proctor's docket fees in courts of the United States may be taxed as costs as follows:  $20 on trial . . . in civil . . . cases . . . ."  Plaintiffs are entitled to recover this fee, which Defendants do not oppose and therefore, the Clerk taxes this **$20.00** cost.

### VIII.   "Other" Costs – Trial Support

Finally, Plaintiffs seek reimbursement of the $45,630 cost of Tangent, which "provided trial support to Plaintiffs by operating the equipment in court and assisting with the presentation of trial exhibits to the court during trial."  Lustberg Decl. ¶ 22.  Plaintiffs assert that Tangent's trial support was "necessary to illustrate and explain the complex issues in the case."  Id.

According to Defendants, who cite the standard of § 1920 (4), "Plaintiffs have failed to show why the vendor services were necessarily obtained for use in the case, as opposed to a mere convenience of counsel." Defs.' Br. at 18.  They further assert that Plaintiffs have not specified which of the line items in Tangent's invoice Plaintiffs attempt to recover, and that Plaintiffs "have not shown which costs were incurred for their Supremacy Clause claim, as opposed to their unsuccessful Dormant Commerce Clause claim."  Id.

Plaintiffs respond to Defendants' objection by explaining that they seek only the cost of Tangent's courtroom and warroom support, and not the cost of meals, hotels, and the like.

41

Pls.' Reply at 5.  However, the Clerk appreciates Defendants' criticism that it is unclear which of the invoiced charges Plaintiffs are attempting to recoup as trial support costs.  All invoiced items described as "Courtroom/Warroom Support" total $36,700, not the $45,630 requested by Plaintiffs.  [Dkt. Entry 324-13, Ex. J].  If the items described as "Travel," to either Princeton or MD, or "Travel . . . /Warroom Support," amounting to $7,702.50, are added in, the new total is $44,402.50.  Adding in two equipment rentals, amounting to $1,560, does not clarify this issue. With the exception of the equipment rental, all services were invoiced by Tangent at the rate of $195.00 per hour.

It is not surprising that Plaintiffs list such fees as "other costs" in their bill of costs, as they are unable to show that these charges fall within the limited categories of § 1920.  They merely cite the Clerk's opinion in the Ricoh case, 2007 WL 1852553, at *3, rendered before the Third Circuit's and Supreme Court's decisions in Race Tires and Taniguchi, for the proposition that the cost of a trial support team is " 'an ordinary litigation expense subject to taxation' for large, complex cases such as this one."  Pls.' Reply at 5.

As another district court within the Third Circuit recently stated, " '[c]ourtroom support' is the type of activity typically performed by paralegals or support staff employed at a law firm, and is therefore akin to attorneys fees, which are not recoverable as costs."  Honeywell Int'l Inc., 2014 WL 2568041, at *11.  Accordingly, this cost is denied in its entirety.

### IX.  Summary

In sum, the Clerk taxes the following costs in favor of Plaintiffs and against Defendants:

Fees of the clerk and marshal, § 1920 (1):          $  1,482.40

Fees for transcripts, § 1920 (2):                   $29,151.12

Witness fees, § 1920 (3):                           $  9,660.17

Costs of making copies, § 1920 (4):          $14,191.16

Docket fees, § 1920 (5):                      $      20.00

**TOTAL:**                                    **$54,504.85**

     For the reasons set forth above, Plaintiffs' motion to tax costs against Defendants

is hereby **GRANTED IN PART AND DENIED IN PART**.  An appropriate order follows.

                           WILLIAM T. WALSH, CLERK

                       By:  S/John T. O'Brien
                             Deputy Clerk

Date:  December 30, 2014